UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SHAUN F. MORTENSEN, | Civil No. 10-4976 (JRT/JJG) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, | |
| Defendant. | |

Patrick R. Martin and Jody A. Ward-Rannow, **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**, Wells Fargo Center, 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402, for plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for defendant.

Shaun Mortensen sought judicial review of the administrative law judge's (ALJ) denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI). Mortensen disputes the ALJ's determination that he is not disabled for purposes of the Social Security Act (SSA). Both parties moved for summary judgment on the issue of whether substantial evidence supported the ALJ's decision. In a September 30, 2011 Report and Recommendation (R&R), United States Magistrate Judge Jeanne J. Graham recommended that the Court grant Astrue's motion and deny Mortensen's motion. Following Mortensen's timely objections to the R&R, this Court reviews *de novo* the challenged portions of the R&R under 28 U.S.C. § 636(b)(1)(C) and D. Minn. L.R. 72.2. Because the Court finds the R&R correctly concluded that

substantial evidence on the record as a whole supported the ALJ's determination that Mortensen is not disabled, the Court overrules Mortensen's objections and adopts the R&R.

## BACKGROUND

Mortensen's history of mental health problems dates back to early childhood. (R. at 109). Mortensen has struggled with anger management and depression, and has a history of harming himself and others. (*Id.* at 767.) He has unsuccessfully applied for disability benefits at least four times. (*Id.* at 714.) Following a hearing on September 19, 2009, the ALJ concluded that Mortensen was not disabled, and denied his application for disability insurance benefits (DIB) and supplemental security income (SSI). (*Id.* at 18.) Mortensen's objections to the ALJ's decision and the R&R recommending that this Court uphold it relate to (1) his low Global Assessment of Functioning (GAF) scores, (2) his treating physician's opinion as to whether Mortensen is disabled, and (3) the ALJ's credibility determination.[1]

**I.    GAF Scores**

Over the years, doctors have utilized Mortensen's GAF scores in order to quantify his overall mental well-being. "The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning 'on a hypothetical continuum of mental health-illness.'" *Pate-Fires v. Astrue*, 564 F.3d 935,

---

[1] This opinion recites only the facts essential to rule on Mortensen's objections to the Magistrate's R&R. For a more detailed factual background, see R&R at 2-14.

937 n.1 (8th Cir. 2009) (quoting Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. Am. Psychiatric Ass'n 1994) (DSM-IV)). The record reflects over six years of medical records, during which time Mortensen had the following GAF scores, ranging from 21 to 52:

- 52 in December 2001 (R. at 1067.)
- 50 in January 2003 (*Id.* at 615.)
- 50 on January 5, 2004 (*Id.* at 911.)
- 25 on January 17, 2004 (*Id.* at 867.)
- 40 in February 2007 (*Id.* at 686.)
- 48 in April 2007 (*Id.* at 710.)
- 21 in April 2008 (*Id.* at 769.)
- 40 in June 2008 (*Id.* at 794.)

The ALJ's opinion declaring Mortensen not to be disabled within the meaning of the SSA did not discuss Mortensen's GAF scores. (*Id.* at 9-18.)

## II.    Opinion of Dr. Timothy Egan

Mortensen saw a number of mental health professionals from July 15, 2005 through December 2008. (*See* R&R at 4-9.)² Mortensen's objections to the R&R's

---

² The Court begins its review of Mortensen's medical file on July 15, 2005, (R. at 45-65), the day following the effective denial of Mortensen's prior application for benefits. *See Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987) (applying doctrine of collateral estoppel to prohibit consideration of certain evidence already considered in a final, previously adjudicated application for benefits).

treatment of Mortensen's mental examinations relate only to the ALJ's consideration of Dr. Timothy Egan's opinion of May 28, 2004. On that date, Dr. Egan opined in a letter that Mortensen "clearly is not going to be capable of maintaining competitive employment." (R. at 827.) Dr. Egan also stated: "As you know [Mortensen] suffers from significant psychiatric difficulties including attention deficit hyperactivity disorder, depressive disorder, psychotic features and borderline intellectual functioning." (*Id.*) The ALJ did not reference this opinion in denying Mortensen's request for benefits in October 2009.[3]

Having last seen Dr. Egan sometime in 2003, Mortensen resumed seeing him in November 2005, after his prior request for disability benefits was denied. (R. at 653; R&R at 4.) Dr. Egan treated Mortensen in November 2005, April 2006, and October 2006 – though the notes also indicate a meeting in January 2006. (R&R at 4.) Dr. Egan's assessment of Mortensen at these sessions was overall positive and optimistic. Dr. Egan found Mortensen "well-developed, well-nourished . . . alert, cooperative and oriented to all spheres" in November 2005. (R. at 653.) Egan also noted during the November visit: "I think he is really looking for some stimulants here in addition to an application for Social Security Disability Income." (*Id.*)

---

[3] In denying Mortensen's previous application for disability benefits, the ALJ noted that it "considered the May 28, 2004, opinion of Timothy J. Egan, M.D. . . . . but gives it little weight because it is vague and conclusory and is not accompanied by the objective medical evidence necessary to support his opinion, such as results of mental status examinations or treatment notes." (R. at 61.)

Dr. Egan's mental status examination in April 2006 found Mortensen to be a "well-developed, well-nourished man in no acute distress," and whose thought-processes were "logical, goal directed, and without evidence of disorder." (*Id.* at 652.) "Immediate recall, recent memory, and remote memory are intact. Insight and judgment are intact." (*Id.*) Dr. Egan's follow-up visit with Mortensen six months later, in October 2006, reached the same conclusions. (*Id.* at 651.) This time Dr. Egan noted, however, that "Mortensen has really been quite irresponsible with most of his medical care and now wants to get on SSI." (*Id.*)

### III. The ALJ's Credibility Determination and Treatment of Elkington's Testimony

Mortensen asserts that the ALJ "repeatedly relied on Mortensen's desire to be granted disability benefits as bearing on his disability." (Pl.'s Objections to R&R at 10, Oct. 17, 2011, Docket No. 18.) The ALJ found various inconsistencies in the information Mortensen provided in connection with his work history, and concluded that, while perhaps not an intentional attempt to mislead, these inconsistencies suggest that the information Mortensen provided "generally may not be entirely reliable." (R. at 17-18.) The ALJ made no other express findings as to Mortensen's credibility. The Decision does recite Dr. Egan's view, expressed in connection with several different examinations, that Mortensen's primary objective in receiving treatment was to build a case for social security disability. (*Id.* at 16.)

Mortensen also asserts that the ALJ's credibility determination fails to take into account Mortensen's dependency on his court-appointed social worker Randy Elkington.

(Pl.'s Objections to R&R at 11.) Elkington generally sees Mortensen twice a week to take him to doctor's appointments, remind him to pay bills, and help him keep his mail in order. (R. at 13, 18-19.) Elkington testified that Mortensen has difficulties concentrating and waking up for medical appointments. (*Id.* at 20.) The ALJ stated that he "considered the testimony of Mr. Elkington and [found] that it is generally consistent with the record of evidence as a whole." (*Id.* at 17.) The ALJ "[gave] some weight [to Elkington's testimony] as to his observations of [Mortensen's] daily activities." (*Id.*)

Finally, Mortensen asserts that the ALJ "incorrectly recited the facts," leading to an erroneous credibility determination. (Pl.'s Objections to R&R at 10.) Specifically, the ALJ observed that Mortensen drove himself to an April 2007 medical examination, and that he drives about 100 miles a week. (R. at 12.) Mortensen clarified, "[I]f I have to go to town for appointments or usually my mental health practitioner takes me, so I don't drive much." (*Id.* at 27.) The ALJ also observed that Mortensen "reported that he is capable of doing his own cleaning, shopping, dishes, cooking, yard work and household chores." (*Id.* at 12.) Mortensen testified, however, that "now that I got a roommate, he cooks because I have problems . . . remembering I'm cooking, so I burn food . . . ." (*Id.* at 26.)

## ANALYSIS

### I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole. 42 U.S.C.

§ 405(g); *Maresh v. Barnhart,* 438 F.3d 897, 898 (8th Cir. 2006) (internal quotation marks omitted). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Vossen v. Astrue,* 612 F.3d 1011, 1015 (8th Cir. 2010). However, reweighing the evidence is not permitted. *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997). Therefore, even if Mortensen's impairments support a claim for disability insurance benefits, the Court **must** affirm if there is substantial evidence to support the ALJ's conclusion to the contrary. *See id.* This Court cannot reverse the Commissioner's decision "merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

## II.   MORTENSEN'S OBJECTIONS TO THE R&R

Mortensen lodges three principal objections to the R&R. First, Mortensen argues that the R&R misinterprets Eighth Circuit cases regarding the importance of Mortensen's GAF score in determining whether he is disabled. Second, Mortensen argues that the R&R gave insufficient weight to Dr. Egan's dispositive conclusion that he is incapable of competitive employment. Third, Mortensen argues that the R&R failed to apprehend the

errors flowing from the ALJ's incorrect credibility determinations and factual misstatements.[4]

### A.    Mortensen's GAF Score

Mortensen first argues that the R&R misapplied *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), by failing to conclude that a history of GAF scores below fifty shows that a plaintiff is unable to work. *Pate-Fires* overturned the ALJ's decision and declared the claimant to be disabled. *Id.* at 944-45, 47. Mortensen argues that *Pate-Fires* stands for the proposition that a history of GAF scores at or below fifty conclusively shows that the claimant is disabled. Indeed, Mortensen refers to a GAF score of fifty as the "disability benchmark." (Pl.'s Objections to R&R at 5.)

Mortensen's reading of *Pate-Fires* is infirm; the R&R correctly rejected it. (R&R at 16.)[5] While the Eighth Circuit **did** chide the ALJ for failing to consider the many GAF scores below 50, including scores as low as 10 or 20, *Pate-Fires* did not hold that a history of GAF scores below 50 conclusively demonstrates that the claimant is disabled. *See Pate-Fires*, 564 F.3d at 944. The language on which Mortensen relies is as follows: "The history of GAF scores at 50 or below, taken as a whole, indicate [claimant] has

---

[4] These arguments largely reprise the same critiques of the ALJ's decision that the R&R considered and recommended rejecting.

[5] The R&R principally dealt with Mortensen's reliance on *Brueggeman v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), in which the Eighth Circuit endorsed use of GAF scores and found that the claimant with a GAF score of 50 was unable to work. *Id.* at 695. As in *Pate-Fires* six years later, *Brueggeman* does not create a presumption that a claimant with a GAF score of 50 or below is disabled *per se*. Rather, the GAF score in *Brueggeman* was but one piece of relevant evidence to consider. *See id.*

'[s]erious symptoms . . . or any serious impairment in social, occupational or school functioning . . . .'" *See id.* (quoting DSM-IV at 32). As the R&R points out, in the very next paragraph the court went on to articulate that the balance of the record supported the treating physician's assessment that Pate-Fires was not capable of employment. *See id.* at 944-45. The GAF scores, in short, were but one part of the analysis. While *Pates-Fires* does highlight the importance of low GAF scores, the ALJ's failure expressly to rely on them does not offend *Pates-Fires* in the face of a record that, considered as a whole, otherwise provides substantial evidence for the ALJ's conclusion. *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) ("An ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." (internal quotation marks and citation omitted)).[6] For example, Dr. Egan's evaluations from the time period under review consistently characterize Mortensen as "alert," "cooperative," "well-developed," "logical," and "goal-directed." Evaluations by other mental health professionals note Mortensen's intellectual deficiencies, but none identifies profoundly disabling characteristics. (*See* R&R at 5-10) (reviewing record evidence). In the context

---

[6] Mortensen also claims that the R&R mistakenly finds support in *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010). That case distinguished *Pate-Fires* on the ground that Jones "[had] not presented a GAF score history indicating that she was at or below a GAF of 50 on several occasions." *Id.* at 974 n.4. That the court took the trouble to distinguish *Pate-Fires* on the basis of the absence of a low GAF score history does highlight the potential importance of a history of low GAF scores. But *Jones* does not change the result in *Pate-Fires*, which did not myopically focus on GAF scores, but rather rested its finding of disability on the totality of the record. *Pate-Fires*, 564 F.3d at 944-45, 947 (reviewing GAF scores in the context of the record, and concluding "the record overwhelmingly supports a finding of disability"). These cases do not stand for the proposition that failure expressly to consider low GAF scores is reversible error, or that a history of GAF scores below 50 compels a finding of disability.

of this record evidence, the ALJ's failure expressly to rely on Mortensen's GAF scores is not error.

Mortensen also complains that the R&R is incorrect to assert that the Eighth Circuit has repeatedly approved the denial of benefits for claimants with GAF scores below 50. (*See* R&R at 17-18 (citing *Martise v. Astrue*, 641 F.3d 909, 919 (8th Cir. 2011) (GAF scores in the 40s and 50s); *Partee v. Astrue*, 638 F.3d 860, 862-63 (8th Cir. 2011) (GAF scores in the 30s and above); *Hurd v. Astrue*, 621 F.3d 734, 736-37 (8th Cir. 2010) (GAF scores of 30, 40, and 75); *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (GAF scores in the mid-40s and low 50s).) Mortensen argues that these cases don't "negate the holding in *Pate-Fires*" that a history of low GAF scores establishes disability. (Pl.'s Objections to R&R at 6.) Specifically, Mortensen points out that in each of these cases, the claimant did not contest the ALJ's failure to consider his or her GAF scores, and thus the Court did not consider that issue.

Precisely the opposite is true. The Court of Appeals "reviews *de novo* a district court decision upholding the denial of social security benefits." *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (internal quotation marks omitted). The appellate court assesses "the record as a whole," meaning "the evidence that supports the Commissioner's decision as well as the evidence that detracts from it," to determine if the Commissioner's decision is supported by substantial evidence. *Id.* The Eighth Circuit concluded in each of the cases noted in Mortensen's objections that substantial evidence supported a finding of no disability. That the court did not specifically consider the ALJ's failure to mention the GAF scores does not change the outcome of these cases:

each evidences that GAF scores below 50 do not mandate a finding of no disability. Had the Eighth Circuit felt otherwise, *de novo* review of the record would have dictated the opposite result in each case.[7]

Finally, Mortensen disputes the R&R's suggestion that his low GAF scores do not square with other evidence in the record suggesting that he does not have a disability. Mortensen emphasizes that the low scores must be read in light of past violent behavioral problems, and that these episodes prove that Mortensen is disabled. To the extent this argument urges the Court to reopen the record and reweigh the evidence, it must decline to do so. *See, e.g.*, *Flynn*, 107 F.3d at 620. The ALJ is permitted to give less weight to GAF scores if they are inconsistent with medical records as a whole, *see Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005), and the ALJ's ostensible decision to do so here is not unreasonable in view of the substantial evidence, including Dr. Egan's positive mental status reports, supporting his conclusion that Mortensen is not disabled. In any event, the ALJ need not credit every piece of evidence submitted, and failure to reference a given piece of evidence does not mean that it was not considered. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). In short, the ALJ's treatment of

---

[7] Mortensen further argues that the R&R underestimates the importance of *Dukes v. Barnhart*, 436 F.3d 923 (8th Cir. 2006), in which the Court again overruled the ALJ and found the claimant to be disabled, even though he was working at the time he applied for benefits and had a GAF score of 55. *See id.* at 926, 928. Mortensen argues that *Dukes* means a GAF score as high as 55 generally indicates an inability to work. Mortensen reads *Dukes* too broadly. Like the other cases the R&R cites, nothing in *Dukes* suggests that GAF scores are anything other than one factor among many. *See id.*

Mortensen's GAF scores is not reversible error because substantial evidence on the record as a whole supports his conclusion.

### B.     Weight Given to Dr. Egan's Opinion

Mortensen next objects to the ALJ's treatment of Dr. Egan's opinion. Specifically, Mortensen argues that the R&R erred by giving insufficient weight to Dr. Egan's conclusion that Mortensen is "not capable of maintaining competitive employment," a conclusion Egan rooted in Mortensen's "significant psychiatric difficulties including attention deficit hyperactivity disorder, depressive disorder, psychotic features and borderline intellectual functioning." (R. at 827.) Mortensen claims "the ALJ engaged in reversible error by ignoring these opinions" in light of the Social Security regulations' requirement that treating physicians' opinions be given "controlling weight." (Pl.'s Objections to R&R at 8).

Mortensen's objection is overruled. As the R&R correctly points out, the ALJ **did** rely on Dr. Egan's assessment of Mortensen's mental state. (R. at 16-17.) While the ALJ must give controlling weight to a medical opinion, it need not give controlling weight to the physician's ultimate opinion that the patient is disabled. *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010); *see also Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). Indeed, the question of whether an individual is "disabled" under the SSA is specifically reserved to the Commissioner. *See Davidson*, 578 F.3d at 842; *see also* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (listing "whether an individual is 'disabled' under the Act" as an example of an "administrative finding[] that [is] dispositive of a case," not a

medical opinion entitled to controlling weight).  Dr. Egan's 2004 opinion that Mortensen "clearly is not going to be capable of maintaining competitive employment" is precisely the kind of ultimate opinion reserved to the Commissioner.[8]  In sum, the R&R correctly found that the ALJ "properly credited Dr. Egan's diagnosis of Plaintiff's multiple conditions and rightly did not give controlling weight to the nonmedical opinion that Plaintiff was incapable of working." (R&R at 20.)

Mortensen also claims error in the ALJ's crediting of the state agency physician, while not giving good reasons for the weight afforded to the treating physician.  Mortensen is incorrect.  The ALJ **did** explain why he accorded weight to the agency physician's opinion, namely because it was consistent with the weight of the objective medical evidence and because the physician had an opportunity to examine Mortensen.  (R. at 16.)

Finally, Mortensen objects to the R&R's statement that the state agency physician opinions were consistent with the record as a whole.  Again Mortensen points to the lengthy history of low GAF scores and Mortensen's reliance on Elkington in arguing that Dr. Egan's 2004 dispositive opinion that Mortensen was unfit to work is the only view consistent with the record.  While the Court must decline Mortensen's invitation to reweigh the evidence, *see, e.g.*, *Flynn*, 107 F.3d at 620, its conclusion about the substantiality of the evidence must reflect not only facts supporting the ALJ's decision

---

[8] In any event, the 2004 opinion was already considered in a prior, final adjudicated application for benefits, and therefore cannot be given undue weight. *See Gavin v. Heckler*, 811 F.2d at 1200.

but also the evidence fairly detracting from it. *See Gavin*, 811 F.2d at 1199. The Court has already noted that Mortensen's various positive mental status examinations sit uneasily with the view that his low GAF scores prove up his disability. Likewise, while Mortensen's reliance on Elkington does speak to some deficiencies, this evidence does not outweigh other record evidence suggesting that Mortensen is capable of the baseline functioning required to work as a packager. (R. at 18.) In terms of Mortensen's objections, this evidence includes Dr. Egan's positive evaluations, which characterize Mortensen as "alert," "well-developed," "logical," and "goal-directed." Because the Court finds that substantial evidence on the record as a whole supports the ALJ's conclusion, Mortensen's objection in this respect will be overruled.

### C. The ALJ's Credibility Determinations

Finally, Mortensen argues that the R&R failed to correct the ALJ's erroneous credibility determinations and misstatements of record facts. More specifically, Mortensen argues that the R&R failed to address three other credibility errors and factual misstatements that the ALJ made. First, the R&R did not address the ALJ's repeated reliance on Mortensen's desire to be granted disability benefits as bearing on his disability. Second, the R&R did not address the ALJ's allegedly incorrect recitation of the facts, which Mortensen claims led to an incorrect conclusion as to credibility. Third, the R&R found no error in the ALJ's failure to appreciate Mortensen's dependency on social worker Elkington.

Mortensen's objections are overruled. "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms . . . ." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). It is enough to observe that much more than "substantial evidence" supports the ALJ's conclusion that Mortensen "generally may not be entirely reliable." (R. at 18.) As the R&R concluded, "[t]he record is rife with instances of exaggerated symptoms, nonexistent symptoms, and positive mental status examinations (MSEs), including MSEs from Plaintiff's treating physician." (R&R at 21-22.)

Moreover, Mortensen's suggestion that the ALJ "repeatedly relied on Mortensen's desire to be granted disability benefits as bearing on his disability" is not accurate. The ALJ's only express finding as to credibility related to inconsistencies with his work history and symptoms. (R. at 17-18.) The ALJ's observation of Dr. Egan's suspicions about Mortensen's motives for being examined does not suggest that the ALJ rooted his finding about Mortensen's credibility in Mortensen's desire to receive disability benefits. (*See* R. at 16.) Regardless, "statements and other information provided by treating or examining physicians" and "the individual's own statements" must all be weighed in determining Mortensen's credibility. *See* SSR 96-7p, 1996 WL 374186, at *1 (credibility determination based on entire record). Of course every applicant for SSI disability benefits desires to receive them. As Mortensen points out, "that is why they apply." (Pl.'s Objections to R&R at 10.) But it is not error for the ALJ to observe Mortensen's

admission of his history of attempts to exacerbate his condition in order to be granted benefits. This history bears on his credibility.

Mortensen also objects that the ALJ discounted Elkington's testimony and incorrectly recited the facts, which led to the erroneous conclusion that Mortensen is not disabled. First, there is little reason to suppose that the ALJ did not credit Elkington's testimony, as the decision states that it did. (R. at 17.) While it is clear that Mortensen relies on Elkington to a certain extent for transportation, and to otherwise help arrange his affairs, Mortensen also testified that he drives at least sometimes, is capable of cooking, buys his own food, and performs other basic tasks. (*Id.* at 26-29.) The ALJ's conclusion appears to fairly take this evidence into account.

Second, it is true that some of the ALJ's factual statements are not precisely in tune with the record. Mortensen specifically objects to the ALJ's observation that Mortensen drives about 100 miles a week, when Mortensen later clarified that "usually my mental health practitioner takes me, so I don't drive much." (*Id.* at 27.) Similarly, the ALJ's observation that Mortensen is capable of cooking is undermined by Mortensen's later clarification that his roommate generally cooks because Mortensen can't remember that he's cooking, and so burns food. (*Id.* at 26.) Finally, some record evidence does suggest the ALJ's observation that Mortensen "reported that he is capable of doing his own cleaning, shopping, dishes, cooking, yard work and household chores," (*id.* at 12), is something of an overstatement. For example, in response to the ALJ's query about whether Mortensen takes care of himself, Mortensen responded: "Try to take care of myself. . . . I brush my teeth six times a year whenever I can remember." (*Id.* at

28-29.) Nonetheless, these errors in the ALJ's recitation of the facts, if errors they be, do not change the Court's conclusion that substantial evidence on the record as a whole – including positive mental status examinations from Mortensen's treating physician Dr. Egan – supports the ALJ's finding that Mortensen is not disabled.

Accordingly, the Court will adopt the R&R, deny Mortensen's motion for summary judgment, and grant Commissioner Astrue's motion.

# ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** Mortensen's objections [Docket No. 18] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated September 30, 2011 [Docket No. 16]. **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 11] is **DENIED**.

2. Defendant's Motion for Summary Judgment [Docket No. 13] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: March 12, 2012                  ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                             United States District Judge